IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-21-221-TDD |
| ) | |
| DAVID DEVAL MARTIN, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Before the Court is the government's Motion to Introduce Evidence Under Federal Rule of Evidence 803 ("803 Motion") [Doc. No. 119]. Defendant filed an Objection [Doc. No. 121]. The matter is fully briefed and at issue.

## BACKGROUND

In 2016, a jury in the District Court of McIntosh County, Oklahoma convicted Defendant David Deval Martin of first-degree murder. But after the United States Supreme Court's decision in *McGirt v. Okla.*, 591 U.S. 894 (2020), the Oklahoma Court of Criminal Appeals vacated Defendant's state-court conviction and remanded the case with instructions to dismiss. Defendant was then charged in the United States District Court for the Eastern District of Oklahoma with one count of Murder in Indian Country (First Degree) in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153. The Indictment alleges that on or about November 7, 2013, Defendant willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully killed Jennifer Kitchens.

In the 803 Motion, the government addresses evidence that "primarily consists of statements that the victim made to her friends and family immediately after [Defendant] terrified her," but "it also includes public statements made by [Defendant] against his own interest." Gov't 803 Motion at 1. Because the government in the 404(b) Notice "already explained how this evidence is intrinsic to the crime or, in the alternative, admissible under Fed. R. Evid. 404(b)," the 803 Motion explores the "grounds for admissibility under Fed. R. Evid 801 and 803." *Id.* at 1-2.

## DISCUSSION

### I.  Defendant's statements under Rule 801(d)(2)(A)

"[A] statement is not hearsay if it is offered against a party and is the party's own statement." *United States v. Benford*, No. CR–14–321–D, 2015 WL 631089, at *4 (W.D. Okla. Feb. 12, 2015); Fed. R. Evid. 801(d)(2)(A). The government seeks to introduce statements made by Defendant at a convenience store shortly before the alleged murder, as well as statements made to his family the morning after the alleged murder. *See* Gov't 803 Mot. at 7-8. Defendant does not address these two categories of statements in his Objection.

Here, both categories of statements satisfy Rule 801(d)(2)(A) because the government plans to offer them against Defendant, and Defendant made the statements in an individual capacity. Therefore, Defendant's statements are non-hearsay and admissible under Rule 801(d)(2)(A).

## II.     The victim's statements to various third parties

### A.     Excited Utterances

Rule 803(2) provides that a declarant's excited utterance is not subject to Rule 802's general bar on hearsay. An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "The exception proceeds on the theory 'that circumstances may produce a condition of excitement which temporarily stills the capacity for reflection and produces utterances free of conscious fabrication.'" *United States v. Magnan*, 863 F.3d 1284, 1292 (10th Cir. 2017) (quoting Fed. R. Evid. 803 advisory committee's note). For a statement to qualify as an excited utterance, "the proponent must establish (1) a startling event, (2) the declarant made the statement under the stress of the event's excitement, and (3) a nexus exists between the content of the statement and the event." *Id.*

#### 1.     The victim's statements to Ms. Pulse

The government first argues that the victim's statements to her friend, Katie Pulse, in the days leading up to the alleged murder are admissible as excited utterances. *See* Gov't 803 Mot. at 10. According to the government, after three days of abuse by Defendant, the victim woke up in the morning and "frantically searched her house for her handgun." *Id.* But when she could not find her gun, and convinced Defendant had stolen it, the victim had a conversation with Ms. Pulse later that day after Ms. Pulse got out of church. *Id.* at 11.[1] Ms. Pulse described the victim as "scared to death at this point cause she had realized

---

[1] It is unclear whether the conversation took place over the phone or in person.

that he stole her gun." *Id.*, Ex. 2 [Doc. No. 119-2] at 5. The victim proceeded to tell Ms. Pulse about the previous three days of alleged abuse.

The Court concludes that, based on the record before it, the victim's statements to Ms. Pulse do not qualify as excited utterances. The Court has no reason to doubt that the victim was scared or distraught during her conversation with Ms. Pulse. However, the three elements set forth in *Magnan* cut narrowly against admission.

It is a close call as to whether the victim's missing gun qualifies as "an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of the observer." 2 MCCORMICK ON EVID., § 272 (8th ed.). Based on information before it, the Court cannot definitively conclude that the victim's gun was actually missing and, if so, that Defendant stole it.[2] However, "courts look primarily to the effect upon the declarant, and if satisfied that the event was such as to cause adequate excitement, the inquiry is ended." *Id.* Further, "the statement itself is considered sufficient proof of the exciting event." *Id.* Therefore, the Court is satisfied that the missing gun qualifies as a startling event and, based on the content of Ms. Pulse's statement, that there is a nexus between the startling event and the victim's statement. *See Magnan*, 863 F.3d at 1292.

Despite finding the presence of a startling event and the requisite nexus between the event and the victim's statement, the Court concludes that, on the current record, the temporal lapse between the event and the victim's statement—and, importantly, the opportunity for reflective thought—takes the statement outside the realm of an excited

---

[2] The Court takes no position on the allegation that Defendant stole the victim's gun.

4

utterance. "The second requirement is substantively the most significant: whether the statement was the result of reflective thought or a spontaneous reaction to the exciting event." 2 MCCORMICK ON EVID., § 272 (8th ed.). Although the passage of time is not entirely fatal, "where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process." *Id.*

Here, it is unclear when the victim spoke to Ms. Pulse. In her statement to law enforcement, Ms. Pulse states that she spoke with the victim after church. And the statement reflects some indication that the conversation may have occurred in the early afternoon, which would have been hours after the victim realized her gun was missing the night before. This amount of time could have given the victim the opportunity to collect her thoughts and provide Ms. Pulse with a reasoned, thought-out version of events or, worse yet, to embellish or fabricate details. *See United States v. Taveras*, 380 F.3d 532, 537 (1st Cir. 2004) ("Thus, the extended delay in this case was long enough to allow Pabon to reflect on the alleged events of the previous night and possibly to fabricate or alter the story that she related to Wallace."); *United States v. Lawrence*, 349 F.3d 109, 119 (3d Cir. 2003) ("Had the same statement been uttered to the police at the scene under different circumstances, it may well have constituted an excited utterance. However, that is not what happened. Rather, Hodge waited until the following day before he made the disputed declaration.").

Additionally, the nature of the victim's statement to Ms. Pulse indicates at least some reflection, as it appears to have been thorough and filled with details from the previous

three days. "The typical excited utterance is short and to the point, often a blurted out exclamation or assertion. An extended or detailed narrative of recent events rarely qualifies as an excited utterance." HEARSAY HANDBOOK 4th, § 9:4. And to the extent the allegedly stolen gun was the startling event, the victim's statement to Ms. Pulse delved into events that occurred well before she noticed the missing gun, thus further undercutting the exclamatory nature of her statement. *See Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 218 (5th Cir. 2024) ("But even if we were to infer that the staff member was startled by Miller's fall, their statement related to events that occurred before the incident—mopping and setting up signs—not the incident itself.").

In sum, the Court concludes the second factor identified by the *Magnan* court—that the victim made the statement under the stress of the event's excitement—weighs against admission of the victim's statements to Ms. Pulse as excited utterances based on the current record.[3]

### 2. The victim's statements to her daughters and her friend

The government next argues that the victim's statements to her daughters, Stormy Moham and Ashley Bershears, as well as her friend, Shannon Proctor, are admissible as excited utterances. *See* 803 Gov't Mot. at 13-15.[4] For primarily the same reasons as set

---

[3] This is not to say that a sufficient foundation could not be established during trial regarding specific portions of the victim's various statements to Ms. Pulse to allow for admission under Rule 803(2).

[4] Ms. Bershears's interview with OSBI [Doc. No. 119-12] states that she is the victim's adopted daughter.

forth above regarding the victim's statements to Ms. Pulse, her statements to Ms. Moham, Ms. Proctor, and Ms. Bershears likely do not qualify as excited utterances.

The government argues that the victim's statements to Ms. Moham the day before the alleged murder (specifically, that "if anything ever happens to me, you know [Defendant] did it") were excited utterances. *Id.* at 13. It appears the government contends that Defendant's repeated calls and texts were the startling events that prompted the victim to make the statements to her daughter. However, even assuming that the calls and texts constitute startling events, the record before the Court does not definitively show when the victim made the statements or what her demeanor was immediately after receiving the calls and texts. The same appears to be true for the victim's statements to Ms. Proctor and Ms. Bershears.[5]

Therefore, the Court reserves a ruling on the admissibility of the victim's statements to Ms. Moham, Ms. Proctor, and Ms. Bershears. At this time, the Court cannot definitively rule as to their admissibility. The Court cautions counsel for the government to approach the bench before any such testimony is elicited or evidence is proffered, to allow the Court to rule on admissibility in the context of the trial evidence.

---

[5] The Court has reviewed Ms. Proctor's statement to the McIntosh County Sheriff [Doc. No. 119-4] in which she recounts a phone call with the victim. Based on her statement, it appears the victim provided the same sort of detailed narrative that she provided to Ms. Pulse. The nature of the statement appears to weigh heavily against admission as an excited utterance.

The Court has likewise reviewed Ms. Bershears's statement [Doc. No. 119-12]. Despite the government's contention that "Ms. Bershears said that she had never heard [the victim] as scared as she was that night," there is nothing in the statement to support that contention. Further, other than stating that the victim spoke with Ms. Bershears "after she had fought with" Defendant, there is nothing in the statement describing that fight and whether it could constitute a startling event.

## B. Then-existing state of mind or emotional, sensory, or physical condition

Rule 803(3) excepts from the hearsay rule "a statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, mental feeling), but not including a statement of memory or belief to prove the fact remembered or believed." The government argues that the victim's statements to Ms. Pulse, Ms. Proctor, and Ms. Moham showed "her near constant state of fear of [Defendant]" and thus fall within Rule 803(3). Defendant does not address this argument in his Objection.

Upon consideration, the Court finds that only the portions of the victim's statements that convey her state of mind are admissible, while any reasoning as to why she held a particular state of mind is not. *United States v. Joe*, 8 F.3d 1488 (10th Cir. 1993) is instructive. There, a witness testified that the victim "said she was afraid of her husband because he had threatened her." *Id.* at 1493. The district court admitted the victim's entire statement under Rule 803(3). *Id.* at 1492. The Tenth Circuit disagreed and concluded that the victim's statement was only partially admissible. Specifically, the court held:

> With respect to the threat statement, Rule 803(3) therefore would extend to Ms. Joe's statement that she was "afraid sometimes." We disagree with the district court's ruling, however, because Ms. Joe's statement to Dr. Smoker, though indicating her state of mind, also included an assertion of *why* she was afraid (i.e., because she thought her husband might kill her). This portion of Ms. Joe's statement is clearly a "statement of memory or belief" expressly excluded by the Rule 803(3) exception.

*Id.* at 1492-93.

The same logic applies here. To the extent the witnesses testify that the victim told them she was scared, felt unsafe, or the like, such statements fall squarely within Rule 803(3). Indeed, the witnesses may even testify that the victim was afraid of Defendant

8

specifically. *See id.* at 1493 ("[The victim's] statement that she was afraid of her husband was admissible under Rule 803(3). The testimony relating [the victim's] belief underlying her fear, however, was not admissible under Rule 803(3).").

However, the witnesses may not relate the victim's belief underlying her state of mind—*i.e.*, that she was scared because she thought Defendant was going to kill her or because of Defendant's prior abuse. *See id.*; *see also Maes v. Leprino Foods Co., Inc.*, No. 15-cv-0022-WJM-MEH, 2017 WL 1077638, at *4 (D. Colo. Mar. 22, 2017) ("For example, Plaintiff could testify that her co-worker told her that they felt harassed or discriminated against. By contrast, Plaintiff would not be able to testify as to what conduct or set of events caused her co-workers to feel discriminated against when they relayed to Plaintiff their particular state of mind or emotional condition on that particular occasion, as such testimony would be a 'statement of memory or belief.' Fed. R. Evid. 803(3)."); *United States v. Vasquez-Garcia*, No. 10–40014–JTM, 2014 WL 7359490, at *12 (D. Kan. Dec. 23, 2014) ("Thus, the letter is admissible only to show its author's state of mind—that his family member was fearful, not that the fear was caused by a threatening phone call. Garcia–Medina can testify that he was a fearful witness and that he received a letter from a family member indicating that its author was fearful. He cannot mention the phone call as the *reason* for the fear under Rule 803(3) and *Joe*.").

### C. Non-hearsay for effect on the listener

The government argues that the victim's statements to her daughter in the days and hours before the alleged murder are non-hearsay if offered for their effect on the listener. *See* Gov't 803 Mot. at 17. Specifically, the government contends, the victim told Ms.

Moham that "they needed a safe word" because "if anything ever happens to me, you know [Defendant] did it." *Id.* at 18. The effect of that statement, the government continues, is that the two did in fact create a safe word. *Id.*

Statements "offered to establish their effect on [the listener] and provide context for [the listener's] statement" are not hearsay. *United States v. Smalls*, 605 F.3d 765, 785 n.18 (10th Cir. 2010); *see also Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) ("Statements offered for the effect on the listener . . . are generally not hearsay."). Such statements "may be admitted to show why the listener acted as she did." *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015). Notably, "[a] statement is offered to show an effect on the listener only if the listener heard and reacted to the statement," and if the "'actual use' of the statement at trial was to demonstrate the listener's response." *United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022) (internal citations omitted).

Upon consideration, the Court concludes that the full extent of the victim's proffered statements to Ms. Moham are not admissible as non-hearsay for their effect on the listener. Ms. Moham will be permitted to testify about the victim's relationship with Defendant, including any alleged instances of abuse or threats that she personally observed. In the Court's view, the alleged abuse that Ms. Moham personally observed, along with other potential reasons, could have led to the creation of a safe word. However, Ms. Moham will not be permitted to testify that the victim told her that "if anything ever happens to me, you know [Defendant] did it."

It appears the primary purpose of introducing such a statement is to prove the underlying truth of the statement—*i.e.*, that if the victim were harmed, Defendant would be the perpetrator. Further, the Court believes that the probative value of the statement is substantially outweighed by the danger of unfair prejudice to Defendant, *see* Fed. R. Evid. 403, and the Court is unconvinced that a limiting instruction would cure any potential prejudice. *See United States v. Ballou*, 59 F. Supp. 3d 1038, 1072 (D.N.M. 2014) ("For all hearsay questions in which a statement is relevant for both hearsay and non-hearsay reasons, the Court must determine whether 'the probative value [of the non-hearsay use of the statement] is substantially outweighed by the risk that the jury will use the statement as proof of the matter asserted.'" (quoting Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, FEDERAL RULES OF EVIDENCE MANUAL § 801.02[b], at 801–13 (2011))). Therefore, the Court concludes that the full extent of the victim's proffered statement to Ms. Moham is not admissible as non-hearsay for its effect on the listener.[6]

### D.   Confrontation Clause

The Confrontation Clause applies only to statements that qualify as "testimonial hearsay." *Davis v. Washington*, 547 U.S. 813, 823 (2006). Statements are testimonial "when the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822. "[F]ormality is indeed essential to testimonial utterance." *Id.* at 830 n.5. That is why "out-of-court statements [that] were made informally to an acquaintance and did not seek

---

[6] To the extent Ms. Moham intends to testify as to other statements made by the victim, the Court reserves a ruling at this time.

to prove facts relevant to a criminal investigation . . . cannot be deemed testimonial." *Garrison v. Ortiz*, 296 F. App'x 724, 726 (10th Cir. 2008).

Here, the limited portions of the victim's statements that are admissible as her then-existing state of mind or emotional, sensory, or physical condition are not testimonial in nature. The statements were not formal conversations with law enforcement or other government officers. Instead, the victim made the statements to friends and family members to provide information on her current situation. Therefore, because the victim's statements were not testimonial in nature, the Confrontation Clause does not apply. *See Mich. v. Bryant*, 562 U.S. 344, 359 (2011).

E.  **Rule 403 balancing test**

Rule 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted). Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. In other words, evidence is unfairly prejudicial if it "tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (emphasis in original) (quotation omitted).

Upon consideration, the Court finds that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice. As explained herein, the Court finds some of the victim's statements to be inadmissible based on the current record. However, for the limited portions that are admissible as the victim's then-existing state of mind or emotional, sensory, or physical condition, the Court finds that admission of the statements does not violate Rule 403's balancing test. *See United States v. Flanagan*, 34 F.3d 949, 953 (10th Cir. 1994) ("[T]he unfair prejudice aspect of Rule 403 'cannot be equated with testimony which is simply unfavorable to a party. It must be unfair in the sense that it would be misleading and not aid and assist the jury in making a material determination in the case.'" (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1549 (10th Cir. 1991))).

## CONCLUSION

For these reasons, the government's Motion to Introduce Evidence Under Federal Rule of Evidence 803 [Doc. No. 119] is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**, as fully set forth herein.

**IT IS SO ORDERED** this 3rd day of October, 2024.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE